**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Ryan Charles Kirkpatrick, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No: 12 C 50400 |
| | ) | |
| Gregory Lambert, | ) | |
| | ) | |
| *Respondent*. | ) | Judge Frederick J. Kapala |

**ORDER**

The clerk is ordered to substitute Randy Pfister as the named respondent. Petition for habeas corpus [1] pursuant to 28 U.S.C. § 2254 is denied. Certificate of appealability is denied. This case is closed.

**STATEMENT**

    Petitioner, Ryan Charles Kirkpatrick, is currently in the custody of the Illinois Department of Corrections, housed at Pontiac Correctional Center, where respondent, Randy Pfister,[1] is the acting warden. Before the court is Kirkpatrick's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his confinement. For the reasons that follow, the petition is denied.

**I. BACKGROUND**

    Kirkpatrick was tried and convicted following a jury trial in the Circuit Court of McHenry County, Illinois of two counts of threatening a public official. The following facts are drawn from the Illinois Appellate Court's opinion in petitioner's direct appeal, People v. Kirkpatrick, No. 2-07-0323, slip op. at 1-6 (Ill. App. Ct. Apr. 29, 2008), which this court presumes are correct. See 28 U.S.C. § 2254(e)(1) (providing that state court factual findings are presumed correct during federal habeas review unless petitioner rebuts them with clear and convincing evidence).

    In 2006, [Kirkpatrick] was indicted on two counts of threatening a public official in connection with letters sent to Maureen P. McIntyre, a McHenry County judge. The first letter, referred to in count one of the indictment, was unsigned, but sent in an envelope bearing defendant's first and last name. Enclosed in this mailing was another letter, also bearing defendant's name. This letter requested both

---

[1]Randy Pfister is the acting warden of the Pontiac Correctional Center where petitioner is incarcerated, thus, pursuant to Rule 2(a) of the Rules Governing § 2254 Cases, the clerk is ordered to substitute Pfister for Gregory Lambert as the named respondent.

correspondences be delivered to McIntyre as well as to two other judges. The first letter was dated November 21, 2004. It had two swastikas drawn on it. The letter stated:

> "Dear Judge Maureen P. McIntyre. So you really thought the system was going to press charges against me. It's only a matter of time before I bust out of prison. Since you decided to go to the police I'm going to kill you. You are such a [illegible] bitch. I'm going to make sure that you die a slow painful death. I don't care who you take this letter to. Are [sic] even if you send this to the prison officials because there's nothing you are [sic] the system can do to me."

The second letter, referred to in count two of the indictment, was dated May 30, 2005. It was sent in an envelope bearing a return address for Joseph Morey, an inmate in the Illinois Department of Corrections. The letter inside, however, was signed by [petitioner]. The letter requested that the materials in the envelope be delivered to both McIntyre and another judge. The second letter stated:

> "You probably though [sic] that I forgot about you. Well I didn't. You actully [sic] though [sic] I was gonna get proscated [sic] for those letters. Well I'm gonna have you killed. If you don't help me get out of prison I'm gonna have you shot three times. I don't care what proscuter [sic] you take this too [sic] aint nobody gonna proscute [sic] me.

> Thank-you.

> Ryan Kirkpatrick"

Before trial, the State filed a notice of intent to introduce evidence of other offenses or conduct. The evidence the State sought to introduce included the following:

(1) a letter signed by "Ryan Kirkpatrick," dated May 30, 2005, and addressed to "Judge Ward Aronld [sic]," stating that, if Arnold did not help defendant get out of prison, defendant would kill him. The letter further stated, "I don't care what proscater [sic] you take this to ain't nobody gonna proscute [sic] me." This letter was sent in the same envelope as the May 30, 2005, letter to McIntyre.

(2) an unsigned letter addressed to Judge Sharon Prather, threatening to kill her "when I bust out of prison" and stating, "I don't care if you take this letter to anybody cause [sic] there's nothing you are [sic] the system can do to me." This letter had a swastika drawn on it and was sent in the same envelope as the November 21, 2004, letter to McIntyre.

(3) an unsigned letter dated November 21, 2004, addressed to "Judge Ward Aronld [sic]," threatening to kill him and stating, "I don't care who you take this letter to because there's nothing you are [sic] the system can do to me." This letter

2

also had a swastika drawn on it and was sent in the same envelope as the November 21, 2004, letter to McIntyre.

(4) a letter dated November 21, 2004, sent to Judge Mary Schostok, and signed by "Ryan Kirkpatrick," stating that he wanted pending charges against him dropped. The letter threatened to kill Judge Schostok and her daughters if she did not comply. The letter also stated, "I don't care who you take this letter to cause there's nothing you are [sic] the system can do to me."

(5) two affidavits sent from the Lake County jail on July 31, 2003, in an envelope from "Ryan Kirkpatrick," stating that, in January 2004, Prather, Arnold, and McIntyre would be killed unless certain demands were met.

(6) two affidavits, written on November 13, 2003, and signed by "Ryan Kirkpatrick," stating that, if not freed from jail by a pardon, defendant would blow up the McHenry County courthouse and kill two judges, "one with the first name of Walter and the other with the first name of Maureen." The affidavit also declared war on the state of Illinois and threatened to kill the governor.

(7) police reports and other documents concerning an investigation of defendant for solicitation of murder of judges, and related charges that were filed.

The handwriting in the letters and affidavits appeared the same as that in the letters of the charged conduct. All of the materials were written on similar paper. Defendant filed motions in limine, seeking to exclude the evidence.

The admissibility of the evidence of uncharged conduct was addressed during several hearings. The State told the trial court that a detective would testify that defendant had admitted to writing some of these materials and had identified the handwriting on them as his own. The State argued that the letters and affidavits should be admitted because they showed consciousness of guilt, lack of mistake, modus operandi, and intent. Furthermore, the uncharged conduct evidence tended to show that defendant was the author of the mailings now subject to charges. The state's position was that the materials were not intended to be used to show defendant's propensity to commit crimes. The State was agreeable to a limiting instruction being given to the jury. Defendant argued that the materials were "very prejudicial" and should not be admitted.

The trial court determined that the materials were admissible to show identity, intent, and modus operandi. The trial court noted that some items also helped establish an element of the offense — that there was a reasonable apprehension by the public official of immediate or future bodily harm. The trial court denied use of the police reports concerning solicitation of murder, because it found that they were more prejudicial than probative, but otherwise allowed most of the evidence of uncharged conduct.

At trial, Andrew Zinke, a McHenry County sheriff's detective, offered his testimony regarding the letters and affidavits. On August 1, 2003, Zinke spoke with

defendant. Defendant told Zinke that he had found the names of the mentioned judges in a library book. Zinke testified that more affidavits, purportedly from defendant, were received in November 2003, and subsequent letters were received from defendant in November 2004 and May 2005. Before the arrival of the May 2005 letters, the correctional facility where defendant was incarcerated was informed about the problem and was asked not to allow further correspondence from him. The May 2005 letters arrived in an envelope bearing the name Joseph Morey. Thereafter, Zinke interviewed Morey and obtained a writing sample, but in Zinke's opinion, Morey's handwriting did not match the handwriting on the letters.

At trial, the affidavits and letters subject to defendant's motion in limine were admitted into evidence. The affidavits were read to the jury, but the letters to judges other than McIntyre were not read aloud. Although there were references to these letters at various points during the State's case, the State primarily focused on the affidavits.

Morey, a former cell-mate of defendant's, testified that he did not write the letters that were sent in the envelope bearing his name, "Joseph Morey," and that his was not the handwriting on the envelope. Morey further testified that he recognized the handwriting on the materials as defendant's. Without objection, Morey also testified that defendant had offered him money to kill two judges. There was a sidebar discussion at the bench, some of which was unrecorded. After that discussion, Morey indicated that he could not recall the names of the judges. Defendant made a motion for a directed verdict, which the court denied. Defendant did not present any evidence on his behalf.

During closing arguments, the State explained to the jury the limited purposes for which the evidence of uncharged conduct was to be considered. The State then argued that the similarities between all the materials established that the letters pertaining to the charges were written by defendant. The State also argued that the letters and affidavits showed a pattern of increasing hostility, which caused the victim to be reasonably apprehensive of immediate or future bodily harm. Defendant argued that the State had failed to prove that he had authored the letters. The jury was instructed that the evidence of other offenses or conduct was received on the issues of defendant's identity and intent and could be considered only for that limited purpose.

The jury found defendant guilty on both counts, and the trial court sentenced defendant to 10 years' incarceration on count one and 14 years' incarceration on count two, to be served consecutively.

From there, petitioner took a direct appeal, arguing that the trial court erred in denying his motions in limine to exclude the letters and affidavits that were not directly associated with the charged conduct. On April 29, 2009, the Appellate Court affirmed petitioner's conviction and found that the letter and affidavits were correctly admitted to show his modus operandi. See Kirkpatrick, No. 2-07-0323, slip op. at 1. Additionally, the Court found that the letters and affidavits were

relevant to show one of the elements of the offense, namely that the threat was made on account of the victims' status as judges, rather than being based on personal animus against individuals who just happened to be judges. Id. at 12.

On May 22, 2009, petitioner filed a Petition for Leave to Appeal ("PLA") with the Illinois Supreme Court, raising the same issue. On September 30, 2009, the Court denied petitioner's PLA. See People v. Kirkpatrick, 233 Ill. 2d 581 (2009) (table).

On June 15, 2009, petitioner filed a pro se post-conviction petition pursuant to 725 ILCS 5/122-1, et seq. In his post-conviction petition, petitioner alleged: (1) the prosecutor violated petitioner's due process rights by delaying sixteen months following petitioner's first letter before indicting him; (2) the prosecutor improperly failed to disclose that he had a conflict of interest, in that the prosecutor was seeking a position as a McHenry County judge and the victim judge was on the nominating committee, and that failure to disclose the conflict violated petitioner's due process rights; (3) the prosecutor failed to disclose a report that would contradict Joseph Morey's claim that petitioner solicited him to blow up the federal courthouse in Chicago; (4) the prosecutor misrepresented the reasons why petitioner's previous offenses were uncharged, thereby violating petitioner's due process rights; (5) petitioner was denied effective assistance of trial counsel when the trial court remanded him to the Tamms Correctional Center rather than the McHenry County jail; (6) petitioner's Sixth and Fourteenth Amendment rights were violated when the trial court denied defense counsel's motion to provide petitioner with copies of discovery materials; (7) petitioner was denied a fair trial when the trial court ruled that defense counsel could not cross-examine witness Joseph Morey regarding why he was in prison; and (8) cumulative error deprived him of a fair trial. The court appointed petitioner an attorney—the same attorney that represented him at trial—who filed an amended petition, which omitted grounds 3, 5, and 7 above but otherwise largely just repeated the original petition verbatim. On August 31, 2010, the court dismissed the post-conviction petition.

Petitioner appealed the court's decision, but changed approaches and argued (with a new attorney): (1) appointed post-conviction counsel failed to comply with Illinois Supreme Court Rule 651(c) where he filed a facially deficient certificate; (2) there was no evidence on the record that petitioner waived the conflict of interest allegedly created by appointing his criminal trial attorney to represent him in the post-conviction proceedings notwithstanding petitioner's allegations of ineffective assistance; and (3) post-conviction counsel was ineffective for simply retyping the original petition and failing to attach available supporting documents to the amended petition. On April 17, 2012, the Appellate Court rejected all three arguments and affirmed the dismissal of the petition. See People v. Kirkpatrick, 2012 IL App (2d) 100898.

On May 2, 2012, petitioner filed a pro se PLA with the Illinois Supreme Court presenting the same issues as were presented to the Appellate Court. On May 23, 2012, petitioner's attorney filed a PLA arguing that (1) the Illinois Supreme Court should reexamine its performance standards for post-conviction counsel in light of Martinez v. Ryan, 560 U.S. 1, 132 S. Ct. 1309 (2012) and (2) post-conviction counsel had a conflict of interest. The Illinois Supreme Court denied leave to appeal on September 26, 2012. See People v. Kirkpatrick, 979 N.E. 2d 884 (Ill. 2012) (Table).

On November 5, 2012, this court received the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. The petition raises ten claims, which petitioner identifies by letter:

Ground A: the trial court admitted evidence of uncharged offenses in violation of petitioner's due process rights;

Ground B: post-conviction counsel was constitutionally ineffective;

Ground C: the prosecutor delayed petitioner's indictment by sixteen months in violation of petitioner's due process rights;

Ground D: the prosecutor failed to disclose the conflict of interest in violation of petitioner's due process rights;

Ground E: petitioner was denied a fair trial when the prosecutor failed to disclose a report that would have contradicted the testimony of Joseph Morey;

Ground F: the prosecutor misinformed the court regarding the reasons that petitioner had not been charged for his previous threats, and in so doing, violated petitioner's due process rights;

Ground G: the trial court violated petitioner's right to the effective assistance of counsel when it remanded him to the Tamms Correctional Center rather than the McHenry County jail;

Ground H: the trial court violated petitioner's right to participate in his defense when it denied defense counsel's motion to provide petitioner with copies of discovery materials;

Ground I: the trial court improperly limited defense counsel's cross-examination of Joseph Morey, thereby depriving petitioner of a fair trial; and

Ground J: the state post-conviction court violated petitioner's due process rights when it appointed trial counsel as post-conviction counsel.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") permits courts to issue a writ of habeas corpus only if the state court's determination of the petitioner's claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000). However, "[a] federal district court may not grant a writ of habeas corpus unless the petitioner has exhausted his state court remedies." Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001); 28 U.S.C. § 2254(b)(1)(A). To exhaust those remedies, the petitioner must fully and fairly present each federal claim to the state courts. Chambers, 264 F.3d at 737-38. "Fair presentment contemplates that the operative facts and the controlling legal principles of the federal claim be submitted to the state court through one complete round of state-court review, either on direct appeal or in post-conviction proceedings." Gonzales v. Mize, 565 F.3d 373, 380 (7th Cir. 2009). Failure to comply with the exhaustion requirement will operate as a procedural default. Chambers, 264 F.3d at 737. A

...

procedural default will bar federal habeas relief unless the petitioner can demonstrate both cause for and prejudice stemming from the procedural default or that the denial of relief will result in a miscarriage of justice. Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004).

### A. Grounds C through I

Grounds C-I are defaulted for failure to present them through one full round of review to the state courts. See Chambers, 264 F.3d at 737-38. Those grounds were raised in the post-conviction petition, but none of them were raised on appeal to the Illinois Appellate Court or Illinois Supreme Court. Petitioner has not established, or even tried to establish, that he should be excused from this procedural default based on cause and prejudice or because denial of relief will result in the miscarriage of justice, therefore this court is barred from considering his arguments in Grounds C-I. See Perruquet, 390 F.3d at 514.

There is one issue which merits discussion in regards to Grounds C-I, however, notwithstanding the clear default. At the end of each argument, which are only a few sentences each, petitioner has added a single sentence declaring that the failure to object to that ground, or to investigate that ground, was also ineffective assistance of counsel from his trial counsel. Coupled with the arguments made in Grounds B and J that post-conviction counsel was ineffective, petitioner could be attempting to satisfy the doctrine recently set out by the Supreme Court in Martinez v. Ryan, 566 U.S. 1, 132 S. Ct. 1309 (2012). There, the Supreme Court held that ineffective assistance of counsel at initial-review post-conviction proceedings can establish the "cause" requirement to excuse procedural default for an argument asserting ineffective assistance of counsel by trial counsel if the underlying state courts require that ineffective assistance be presented for the first time in collateral proceedings. See id. at 1315. The Supreme Court recently expanded Martinez somewhat, providing that Martinez applies to states which theoretically permit a criminal defendant to raise ineffective assistance on direct appeal, but place procedural impediments in the way so that, in practice, a criminal defendant is only able to raise it on collateral review. See Trevino v. Thaler, 569 U.S. ___, 133 S. Ct. 1911, 1915 (2013).

In this case, Martinez does not help petitioner overcome his default. First, this court has held that Martinez does not apply to habeas petitions arising from criminal cases in Illinois, notwithstanding Trevino. See Diaz v. Pfister, No. 12 C 286, 2013 WL 4782065, at *10 (N. D. Ill. Sept. 4, 2013) (noting that Illinois does permit, both in theory and practice, the development of ineffective assistance of counsel arguments on direct review). Second, even if Martinez does apply to habeas petitions arising from criminal cases in Illinois, Martinez requires that the petitioner show that his defaulted ineffective assistance claim is "substantial" in order for this court to permit the post-conviction counsel's ineffective assistance to serve as "cause" to excuse the procedural default. See Trevino, 133 S. Ct. at 1918 (noting that Martinez allowed a "federal habeas court to find 'cause,' thereby excusing a defendant's procedural default, where (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim; and (4) state law requires that an ineffective assistance of trial counsel claim be raised in an initial-review collateral proceeding." (alterations and quotation marks omitted)). Petitioner makes no attempt to explain how his claims for ineffective assistance tacked onto the end of each of his

7

claims are substantial. Third, Martinez would only provide "cause" for relieving default, but petitioner must establish both cause and prejudice. See Perruquet, 390 F.3d at 514. Thus, even if Martinez did apply and petitioner qualified for the exception, petitioner has made no attempt to establish prejudice. Fourth, and finally, even if Martinez applied and the court were to find prejudice, petitioner's ineffective assistance arguments are literally one sentence long with no legal citation or explanation as to how Strickland applies to each, or any, of his arguments. Arguments raised in such a perfunctory manner are waived. See United States v. Irons, 712 F.3d 1185, 1190 (7th Cir. 2013) ("Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." (alteration and quotation marks omitted)).

Accordingly, for each and all of the foregoing reasons, petitioner's request for a writ of habeas corpus pursuant to § 2254 is denied as to Grounds C-I.

### B. Grounds B and J

Grounds B and J, which both assert that post-conviction counsel was ineffective, are non-cognizable on federal habeas review. There is no federal constitutional right to assistance of counsel in collateral proceedings. See 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); Pennsylvania v. Finley, 481 U.S. 551, 559 (1987) ("At bottom, the decision below rests on a premise that we are unwilling to accept-that when a State chooses to offer help to those seeking relief from convictions, the Federal Constitution dictates the exact form such assistance must assume. On the contrary, in this area States have substantial discretion to develop and implement programs to aid prisoners seeking to secure postconviction review. In Pennsylvania, the State has made a valid choice to give prisoners the assistance of counsel without requiring the full panoply of procedural protections that the Constitution requires be given to defendants who are in a fundamentally different position-at trial and on first appeal as of right. In this context, the Constitution does not put the State to the difficult choice between affording no counsel whatsoever or following the strict procedural guidelines ennunciated in Anders."). Accordingly, petitioner's request for a writ of habeas corpus pursuant to § 2254 is denied as to Grounds B and J.

### C. Ground A

Ground A, that the trial court erred in admitting evidence concerning petitioner's other threatening letters and affidavits to judges and other public officials, was presented to the state courts through one full round of review, unlike Grounds C-I. Specifically, petitioner raised this ground at the trial court and then on direct appeal to both the Illinois Appellate Court and Illinois Supreme Court. Nevertheless, this court is still barred from considering the argument, as plaintiff failed to fairly present the federal nature of his argument to the state courts. See Gonzales, 565 F.3d at 380 ("Fair presentment contemplates that the operative facts and the controlling legal principles of the federal claim be submitted to the state court through one complete round of state-court review, either on direct appeal or in post-conviction proceedings."). In his legal briefs to the Illinois Appellate Court and Illinois Supreme Court, petitioner relied almost exclusively on Illinois cases which discuss Illinois common and evidentiary law. Indeed, the only citation to federal law came in the form of a citation to a single federal case, United States v. Ring, 513 F.2d 1001 (8th Cir. 1975). However,

8

Ring only reviewed the admissibility of other "bad acts" evidence in the context of an evidentiary rule, not a constitutional challenge, and thus appears to have been argued in support of the petitioner's conclusion that the admission of the "bad acts" evidence violated Illinois common law and evidentiary rules by comparing a similar rule. See id. at 1004. Accordingly, because petitioner failed to fairly present the federal ground for his argument to the state court, this ground is also defaulted. Petitioner fails to argue cause or prejudice, as set out supra. Therefore, the court is barred from considering this ground.

Furthermore, even if petitioner had provided fair presentment of the ground to the state courts, his argument is meritless. This court does not sit in review of state evidentiary laws or common law, petitioner can only succeed with this argument if he shows that he was deprived of due process. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("In ruling that McGuire's due process rights were violated by the admission of the evidence, the Court of Appeals relied in part on its conclusion that the evidence was incorrectly admitted pursuant to California law. Such an inquiry, however, is no part of a federal court's habeas review of a state conviction. We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." (citations and quotation marks omitted)). As the Seventh Circuit has explained:

> When a state keeps out evidence favorable to the criminal defendant or prevents him from cross-examining the prosecution's witnesses, it runs the risk of being found to have prevented him from defending himself or confronting the witnesses against him, in violation of the Sixth Amendment, which the Supreme Court has applied to the states through the Fourteenth Amendment. But when the state merely fails to limit the prosecution's evidence, the only constitutional principle to which the defendant can appeal is a catch-all sense of due process, and the appeal almost always fails. If the evidence is probative, it will be very difficult to find a ground for requiring as a matter of constitutional law that it be excluded; and if it is not probative, it will be hard to show how the defendant was hurt by its admission.

Watkins v. Meloy, 95 F.3d 4, 6-7 (7th Cir. 1996) (citations omitted). Here, as the Illinois Appellate Court pointed out, the prosecution was required to show, as part of the crime charged, that petitioner threatened the judges on account of their official status. The letters and affidavits, which evidenced threats against other officials, were then probative to show that the threats in petitioner's case were based on a desire to threaten the victims on account of their official status, rather than being based on some personal animus. Because the evidence was probative on one element of the charges against petitioner, due process was not violated by the admission of that evidence. See id. Thus, for each of the foregoing reasons, petitioner's request for a writ of habeas corpus pursuant to § 2254 is denied as to Ground A.

### III. CONCLUSION

Petitioner's request for a writ of habeas corpus pursuant to § 2254 is denied. Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to grant a

9

certificate of appealability. Based on the foregoing analysis, petitioner has not established that reasonable jurists could debate the correctness of the court's decision. Accordingly, the court declines to issue a certificate of appealability.


Date: 10/2/2013

ENTER:

_____

FREDERICK J. KAPALA

District Judge